## SARAH E. MITCHELL *v.* HENRY S. MITCHELL.

### *Decided December 18th, 1868.*

WILLS ; CONDITIONAL LIMITATIONS ; FORFEITURE ; WHEN ENFORCED IN EQUITY ; ANNUITIES, RENTS AND PROFITS ; BILL FOR ACCOUNT.

A testator devised to his son James, certain real and personal property in trust, that the testator's daughter should be permitted to use and occupy the same, and apply the rents and profits to her separate use

and benefit, so long as she should remain single, and in the event of her marriage, then in trust for her heirs and assigns; but if at any time thereafter she should unite herself to any religious sisterhood, then her enjoyment of said property should cease or be suspended, and in lieu thereof the trustee should pay her annually the sum of $200, so long as she should remain attached to such sisterhood, and invest the surplus rents and income thereof, in some productive fund, for her use, should she at any time leave such sisterhood, or for the use of the person or persons who should become entitled under the will. The testator then declared it to be his will that if his daughter should die without having been married, or should be united to any religious sisterhood for ten years, in immediate succession, then the property so devised in trust for her, and all interest accrued upon the fund and the fund itself should

**582**    devolve upon *his sons, Francis and Henry, or the survivor of them and the heirs of such survivor, subject during the life of the daughter to the payment to her of $200 per annum. The testator died in 1825, and thereupon the trustee entered into possession of the property, and thenceforth took or permitted the daughter to take the rents and profits thereof until his death in 1837. On the 25th of April, 1837, the daughter united herself to the sisterhood of the Visitation in Baltimore, under the rule of the Roman Catholic Church, and has since remained attached thereto. Francis died intestate and without issue, leaving Henry surviving. On a bill filed in 1854, by Henry, against the daughter, praying for an account of the rents received by her or by her authority, or which might have been received, but for her default, from the time she united herself to the religious sisterhood, and that she might be required to pay him the excess over $200, per annum, and on her failure that such excess should be discounted and set off against the annuity to accrue in future, so that no part of the rents should be paid to her until the excess was fully accounted for, etc. *Held:*

Upon the happening of the event provided for by the will, the estate vested in Henry, the devise being a conditional limitation and not in the nature of a forfeiture.                                        p. 592

It is such a limitation, as a Court of Equity is bound to observe, as well as a court of law. (*a*)                                        p. 592

Henry is entitled to an account of the rents and profits; and in the

---

(*a*) The rule that equity will not enforce a penalty, does not apply to cases of conditional limitations, but only to penalties and forfeitures absolute and certain; *Gough v. Manning*, 26 Md. 361; *Barnum v. Barnum*, 62 Md. 275; but conditions imposed *in terrorem* only, will not be enforced; *Contee v. Dawson*, 2 Bland, 249, note (*d*); nor conditions against public policy,—as in restraint of marriage; see *Bannerman v. Weaver*, 8 Md. 517, note (*a*); *Gough v. Manning*, 26 Md. 347; nor to the fines and forfeitures provided in the case of Building Association Mortgages; *Shannon v. Building Association*, 36 Md. 383. But a Court of Equity will *never require* that a party should *insist* upon a forfeiture as a remedy; see *Donelson v. Polk*, 64 Md. 506.

statement of the account, the daughter should be charged from the time she attached herself to the religious sisterhood, with the income arising from the estate, while she was in possession, and interest thereon, and should be credited with the annuity of $200, payable to her under the will, and the insurance and taxes on the property.

p. 594

That the sum which should be found due upon such statement of the account, should be decreed to be paid by her with interest on the principal of the debt; and Henry, who obtained possession of the property under his action of ejectment since the filing of the bill, is entitled to retain the future annuities payable to her, until the debt to him is discharged. p. 594

That the daughter is entitled during her life to the annuity without abatement, the same being a charge upon the estate, whether the income arising therefrom be sufficient or not to pay it.  (b)     p. 594

Appeal from the Circuit Court of Baltimore City.

The bill of complaint in this cause was filed by the appellee on the 13th of June, 1854. It set forth a devise by Francis J. Mitchell, of a house and lot on Saratoga street in the City of Baltimore, in which he then lived, together with the furni- *ture therein, and other chattels enumerated in the will, **583** to his son, James D. Mitchell, the only brother of the whole blood of the appellant, in trust that she should be permitted to use and occupy the same, and apply the rents and profits to her separate use and benefit, so long as she should remain single, and in the event of her marriage, then in trust for her heirs and assigns. But if at any time thereafter she should unite herself to any religious sisterhood, then her enjoyment of said property should cease or be suspended, and in lieu thereof, James D. Mitchell, should pay her annually the sum of two hundred dollars, so long as she should remain attached to such sisterhood, and invest the surplus rents and income thereof, in some productive fund, for her use, should she at any time leave such sisterhood, or for the use of the person or persons who should become entitled under the will. But should his daughter die without having been married, or should be united to any religious sisterhood for ten years, in immediate succession, then the property devised in trust for her, and all interest accrued upon the fund, and the fund itself should devolve upon his sons,

---

(b)   As to charges on land, see *Power v. Jenkins*, 13 Md. 442-443, note (a).

Francis J. Mitchell and the appellee, or the survivor of them, and the heirs of such survivor; subject, during the life of the daughter, to the payment to her of two hundred dollars per annum.

The bill charged that the testator died in 1825, that the trustee entered into possession of the house and lot and thenceforth took, or permitted the appellant to take the rents and profits thereof until his death in 1837, since which time the appellant has been in possession, and taken the rents and profits to her own use; that in the year 1837, she united herself with the Convent of the Visitation of the Blessed Virgin Mary, a religious sisterhood of the Roman Catholic Church, located in the District of Columbia, outside this State, that she had been for more than ten years past, a professed nun of the strictest order, and that she had never married. The bill insisted that the trusts of the will had thus determined, and the legal estate in the premises devolved upon the appellee, as survivor of **584** *Francis J. Mitchell, who died in infancy, unmarried and without issue, in the year 1832. The bill then stated that the appellant pretended that the legal estate in the property had descended upon her as the sister of the whole blood of James D. Mitchell, and that the trusts of the will still subsisted in her favor,—that she had suffered the premises to become ruinous and dilapidated;—that the rents theretofore received by her, largely exceeded the sum of two hundred dollars per annum; and that the aggregate of such excess would form a sum, the interest of which would be equivalent to the value of that annuity, and that by her neglect of the premises, the rents and profits had become greatly diminished. The bill prayed for an account of the rents received by the appellant or by her authority, or which might have been received, but for her default from the time of her uniting herself with the Convent of the Visitation,—that she might be required to pay the excess over two hundred dollars per annum to the appellee, and on her failure, that such excess should be discounted and set-off against the annuity to accrue in future, so that no part of the rents should be paid to her, until the excess was fully accounted for, and that if the arrear in the hands of the appellant should be equivalent to the value of the annuity, and she should refuse to pay it to the appellee, the premises might be declared free

from the incumbrance,—that the legal estate therein might be declared to have become executed in the appellee, and the appellant required to surrender possession, or if the court should be of opinion that the trusts still continued for any purpose, that the premises might be sold, and the proceeds applied under the direction of the court; and that in the meantime a receiver be appointed. It was agreed between counsel that on the 25th of April, 1837, the appellant united herself to the sisterhood of the Visitation in Baltimore, a religious sisterhood, under the rule of the Roman Catholic Church, and had ever since continued united to said sisterhood, and on the 26th of March, 1845, she became a fully professed member in full communion with that sisterhood, and had ever since remained such.

*The appellant demurred to the bill, and on the 11th **585** of October, 1856, the court (Krebs, J.,) filed an opinion, in which it was declared that the title of the appellee had enured by reason of the breach of a condition subsequent, and that it was an universal rule of equity never to enforce a penalty or forfeiture, and that the title of the appellee was a legal title, and should be established at law before he could be entitled to the relief asked for by the bill. On November 28, 1856, an order was passed retaining the bill for twelve months, with liberty to the appellee to proceed at law, and further directions were reserved; the bill was retained for a further time by an order passed December 10th, 1857. The appellee thereupon brought his action of ejectment in the Superior Court, where a judgment was rendered adverse to his claim; he thereupon filed his petition on January 24th, 1857, stating these proceedings and the adverse judgment of the Superior Court, and praying that the demurrer might be overruled and an answer required; and, on the 5th of August, 1859, " in deference to the opinion of the Superior Court," an order was passed, whereby the demurrer was overruled and the appellant required to answer.

The answer insisted that the Superior Court decided that the legal title clothed with the trusts declared in the will still continued in full force, and that the appellee had neither the legal nor equitable title to the property; that during the lifetime of the appellant, the appellee could have no title, because any such title would rest upon a forfeiture, which could not be enforced in a Court of Equity;—that in fact, during the life of the ap-

pellant, no forfeiture occurred, but the only effect of her uniting herself with a religious sisterhood, was to suspend her enjoyment of the rents and profits over and above the annuity, and to cause the said rents to accumulate till her death.   To this answer, a general replication was entered.

A decree for an account, and appointing a special auditor to take the same, was afterwards passed; and, on the 8th of February, 1867, the special auditor filed his report and account.

**586** *wherein he charged the appellant with the rents received or contracted for, from the spring of 1837, less the taxes, insurance and annuity to herself, with interest on each year's rent due down to the close of the year 1866, whereby a large sum appeared due from the appellant to the appellee, which account was ratified March 18th, 1867.   But on March 23, 1867, the appellant filed a petition stating that the appellee had appealed from the judgment of the Superior Court in the ejectment case, and the same had been reversed; but that in applying to the court to overrule the demurrer of the appellant, the appellee had concealed the fact of his intention to appeal, and that inasmuch as the action of the court had proceeded upon the theory that the appellee was remediless at law, it would be a fraud upon the court to allow him to obtain the benefits of the result of the adverse judgment of the Superior Court, which, by its own action, he had annulled, and that the appellee held a legal title, and could obtain a plain remedy at law; and it prayed that, as the order overruling the demurrer was passed on the erroneous suggestions of the appellee, it should be rescinded, and all proceedings thereunder annulled.   She also excepted to the auditor's account.   The appellee answered this petition.   On the 9th of October, 1867, the court (Alexander, J.,) passed its decree dismissing the petition, overruling the exceptions to the auditor's account, and finally ratifying it, ordering the appellant to pay by a day therein named, the balance appearing due by it to the appellee, with costs, and declaring that in default thereof, the appellee should be authorized to retain all future instalments of the annuity to become payable to the appellant, and apply the same, as they might accrue, to the satisfaction of so much of the appellee's claim, until the whole should be discharged.   From this decree, the present appeal was taken.

The cause was argued before Bartol, C. J., Nelson, Stewart, and Miller, JJ.

*Robert J. Brent,* for the appellant:                              **587**

The object of the bill was to obtain the declaration that the forfeiture occurred as far back as 1837, and for an account and discovery. To this equity will not lend its assistance. Story's Eq. Pl. secs. 579, 583; *Chancey v. Fenhoullett,* 2 Ves. Sr. 265.

The whole of the rents of the property were vested to the use of Sarah, subject to the forfeiture of the excess over $200, in case she joined and remained united, for ten years, to a religious sisterhood. If, on the last day of the ninth year, she had ceased to be united for even one day to the religious sisterhood, then the title of the accumulated surplus sued for in 1854, would not have vested in the appellee. She joined the sisterhood in 1837, and, by the provisions of the will, forfeited the rents in excess of $200 per annum, but the surplus did not pass to the appellee until at the end of ten years, at which period the absolute forfeiture was inflicted by declaring that the accumulated surplus should *then* belong to Henry. In 1854 the appellee sued the appellant in equity for the surplus accumulated between 1837 and 1847, seven years before the bringing of the suit. This accumulated surplus only belonged to the appellee because the appellant had forfeited it in 1847; and he prays the aid of equity for a discovery and account to enforce his forfeiture, which cannot be done. *Horsburg v. Baker,* 1 Pet. 232; *Livingston v. Tompkins,* 4 John. Ch. 431; *McKim v. White Hall Co.* 2 Md. Ch. 516; 2 Story's Eq. 1319, 1492.

The remedy of the appellee was full and complete at law. The rents from 1847 were recoverable at law as *mesne* profits, and the law of limitation applies to the recovery of these rents; and by going into equity, the appellee seeks to avoid this defense. The excess of rents previous to 1847, were the accumulated profits which were due him through the continuous union of the appellant with a religious sisterhood; and this cause of action accrued in 1847.

The auditor's account should not have been ratified; it assumed that the appellant was the trustee of the appellee, *following the erroneous decision of the Superior Court **588** and the opinion of Judge Krebs, and on this theory charged

her with interest on the surplus income of each year exceeding $200, from 1838 to 1861. But this court, in *Mitchell v. Mitchell,* 18 Md. 405, expressly decided that she was not such trustee, and hence this mode of stating the account must be abandoned. Since 1847, the appellee has held the legal and equitable title, and was entitled to the possession, subject to the payment of $200. From this it results that if the appellant were in possession she was accountable for *mesne* profits, and can interest be recovered for unliquidated back rents in equity, and before recovery at law?

In addition the appellant pleaded limitations to the account as stated. If she were not the trustee of the appellee, as she was not, it is difficult to see why he is not barred by the statute. The appellee has already obtained the benefit of the rule of law that limitations are a bar to a recovery of *mesne* profits. *Mitchell v. Mitchell,* 10 Md. 234.

Again, the will imposed on the appellee the payment to the appellant of $200. The auditor failed to allow her any credit for the failure to pay this sum from 1861 to 1867, during which time the appellee has had possession. So far as the rents prior to 1847 are involved, they were overdue at the filing of the bill for seven years, and independent of the objections against enforcing a forfeiture, as the fund was to accumulate, interest was not chargeable on those rents. There could be no claim to charge interest on the accumulating rents, as the trustee alone was to invest them, and as he or his administrator is no party in this case, no relief can be given for those accumulated rents, principal or interest.

*Julian J. Alexander* and *T. A. Linthicum,* for the appellee:

So soon as the appellant joined the religious sisterhood in 1837, her enjoyment of the surplus income was to cease, and it was to be accumulated; and by her remaining connected with the sisterhood for ten years, that is to say in 1847, her **589** *interest in it ceased. By the death of her brother in 1837, the legal title descended to her, clothed with the trust to accumulate until 1847, when it devolved on the appellee, but remained charged with her annuity; and the relation of trustee and *cestui que trust* has existed reciprocally between the parties since the death of James D. Mitchell. And as to the accumula-

tions directed by the will, the appellant still continued trustee for the appellee. That a charge like this annuity was a trust properly cognizable in equity, is plain from the words of the will. *Luckett v. White,* 10 G. & J. 480; *West v. Biscoe,* 6 H. & J. 460; *Townsend v. Duncan,* 2 Bland, 53; Story's Eq. Jur. 602.

The jurisdiction of the court is to be tested by the averments of the bill. *Williams v. West,* 2 Md. 474; *Ridgway v. Toram,* 2 Md. Ch. 303. The bill disclosed a clear case for equitable interposition. Independent of the question of forfeiture, it is clear that a *cestui que trust* may compel a trustee, upon the determination of the trust, to surrender the property to him by a proceeding in equity. *Bennet v. Whitehead,* 2 P. W. 644; *Jones v. Jones,* 5 Bro. Ch. 80; *Bridget v. Hames,* 1 Collyer, 72; *Jones v. Lewis,* 1 Cox, 199; *Matthews v. Ward,* 10 G. & J. 443; *Goodson v. Ellison,* 3 Russ. 593; *Willis v. Hickox,* 4 M. & Cr. 199; *Knight v. Martin,* 1 R. & M. 70; *Angier v. Stannard,* 3 M. & K. 556; *Roberdeau v. Rous,* 1 Atk. 543; *Brown v. Hewes,* Barn. 354; *Angus v. Angus,* 1 West, 23; *Lemmond v. Peoples,* 6 Ired. Eq. 137; *Brerton v. Gamul,* 2 Atk. 240.

The accumulation of surplus rents directed by the will was a pure trust, and exclusively cognizable in equity. The appellee was entitled to an account of these accumulations, and the surplus rents which had accrued since the devolution of the legal estate upon him, which the appellant ought to have surrendered. The accumulations not having been made, there was a clear breach of trust. *Robinson v. Robinson,* 1 De. G. M. & G. 247; *Ringgold v. Ringgold,* 1 H. & G. 12, 80. The bill charged, too, that she had suffered the premises to *become ruinous **590** and dilapidated. She was therefore chargeable with the increased rents, which, but for her default, might have been realized. Story's Eq. Jur. 1275; Hill on Trustees, 522, 523.

The bill insisted on an account, and thus submitted to her an allowance of her disbursements on account of the property which she could not have had in law. *Brandon v. Johnson,* 2 Ves. 517. And a discovery for the purposes for this account was plainly essential. Story's Equity Jur. 443, 465, 512; *Williams v. West,* 2 Md. 174.

It was sought, too, to subject the charge itself to the satisfaction of the debt which would appear due on the accounts being taken. *Raby v. Ridehalgh,* 7 De. G. M. & G. 104. If in

the opinion of the court the charge still subsisted, a sale was asked for, for the advantage of both parties; and in the meantime a receiver was asked for to protect the estate from further wreck. It is plain that not one of these remedies could be applied in a Court of Law, yet to relief on all these forms the appellee was entitled.

Equity has a jurisdiction, generally, where the remedy at law is inadequate or difficult, and where it entertains jurisdiction for any purpose, it will proceed to give full relief. In matters of account it is continually exercised. Story's Eq. Jur. 452, *et seq:*

There is no authority for saying that this jurisdiction is not exercised in claims for *mesne* profits. On the contrary, it is perfectly clear that if there be a trust estate, and the *cestui que trust* comes into equity upon his title to recover the estate, he will be decreed to have the further relief of an account of rents and profits. *Yates v. Hambly,* 2 Atk. 362, 363; Story's Eq. Jur. 465, 512, and cases there cited; 1 Fonbl. Eq. B. 1, ch. 3, sec. 3, note *k; Strike's Case,* 1 Bland, 57; *Drury v. Conner,* 1 H. & G. 220.

As between trustee and *cestui que trust,* where the indebtedness is undecided, and there is no express promise to pay, equity **591** alone has jurisdiction. Story's Eq. 962; *Nelson v. *Howard,* 5 Md. 327; Hill on Trustees, 518; *Green v. Johnson,* 3 G. & J. 389. And in cases of breach of trust, a suit in equity is the only effectual means of relief. Hill on Trustees, 518.

The devise in the will was no condition, but a conditional limitation of the estate. *Porter v. Fry,* 1 Mod. 300; *Mitchell v. Mitchell,* 18 Md. 405. And it is to be treated in a Court of Equity, precisely as any other limitation, where the interest of a *cestui que trust* determines, and the trustee claims the possession against and refuses to account with the person entitled. *Stone v. Godfrey,* 5 De. G. M. & G. 76.

Then how far back is the recovery to be carried? Limitations were not relied on in the answer, and besides twenty years have not elapsed. The law has been settled from *Bennet v. Whitehead,* 2 P. W. 644, that the recovery extends back to the accrual of the plaintiff's title.

This was a pure chancery trust. It could never be executed at law. In fact the accumulations were never made. So that

not only was the appellant a trustee, but she was a trustee guilty of breach of trust.    There can be no question of limitations.' *Oehler v. Walker,* 2 H. & G. 323; *Luckett v. White,* 10 G. & J. 480; *Strike's Case,* 1 Bland, 53; *Dugan v. Gittings,* 3 Gill, 138; *West v. Biscoe,* 6 H. & J. 360; *White v. White,* 1 Md. Ch. 33; *Kane v. Bloodgood,* 7 John. Ch. 115; *Hovenden v. Annesly,* 2 Sch. & Lef. 207.    In cases of express trust, accounts have been decreed against trustees extending over thirty, forty and fifty years.    *Ward v. Arch,* 12 Sim. 472; *Weddeiburn v. Weddeiburn,* 2 Keene, 272; Hill on Trustees, 204.    And where there is a breach of trust limitations are no bar. *Milnes v. Cowley,* 4 Price, 103.

Interest was properly allowed by the auditor's report and account.    The remedy for breach of trust being in equity, it is administered on equitable principles, and the trustee is invariably charged with the amount of principal and income which would or might have been received from the 'trust *estate if no breach of trust had been committed. *Rocke* **592** *v. Hart,* 11 Ves. 60; *Shepherd v. Towgood,* 1 T. & R. 379; *Pride v. Fooks,* 2 Beav. 430.    So where a strong case of improper conduct is established against the trustees, and there is an express direction in the instrument creating the trust to *accumulate* the income, the account will be directed to be taken with yearly or half-yearly rents, thus charging them with compound interest. *Ringgold v. Ringgold,* 1 H. & G. 12; *Diffenderffer v. Winder,* 2 Bland, 166, and 3 G. & J. 311; *Comegys v. State,* 10 G. & J. 186.    The question in this case, then, is not whether the trustee ought to be charged with simple, but whether she ought not to be charged with compound interest.

·Stewart, J., delivered the opinion of the court.

The will of Francis J. Mitchell creates a conditional limitation of the estate involved in this litigation, depending upon the occurrence of the event provided for in the will.    It was urged by the counsel for the respondent, that a Court of Equity ought not to aid in enforcing a penalty or forfeiture, and that the demand of the complainant was of that description.    We have said, this devise is a conditional limitation—as such, a Court of Equity is bound to regard it, as well as a court of law.

" The general rule, that a Court of Equity never enforces a forfeiture, has not been applied to cases of conditional limitation. It applies to penalties and forfeitures absolute and certain." *Gough v. Manning,* 26 Md. 361.

James D. Mitchell, the original trustee under the will, to whom the legal estate was devised in trust, having died in the year 1837, the estate, bound by the trust, created by the will, devolved upon Sarah E. Mitchell, his heir at law, who thus held the property until the determination of her legal estate, in the year 1847, when, by the limitation of the will, it vested in Henry S. Mitchell, the survivor of Francis—the contingency limited in the will having happened. At this period, Henry S. Mitchell **593** was entitled to the legal estate—*Mitchell v. Mitchell,* 18 Md. 405—but did not recover from her the actual possession of the property until October, 1862, after the decision of this court in favor of his title in the action of ejectment instituted by him in May, 1857. He was also entitled to the income thereof, with any accumulated surplus that had accrued therefrom, subject to the trust in the will, to wit: the annual payment of two hundred dollars to his sister Sarah, during her life. Her right to this annuity is not made, by the will, dependent upon the sufficiency of the rents and profits to pay it, year by year, but is absolute. The annuity is made a charge on the *corpus,* as well as on the accumulated fund provided for in the will. But as this bill was not filed until the year 1854, and for the surplus rents and profits which had accrued, not only up to the year 1847, but to the filing of the bill, the respondent insists that the complainant has no good and valid claim, owing to the lapse of time, and that if he have any demand whatever, certainly not to the extent of the decree below ratifying the action of the special auditor. We do not think, under the peculiar circumstances attending her possession of the property, that either limitation or lapse of time is a bar to a recovery in this suit. Sarah E. Mitchell having held the possession, as trustee, until the year 1847, when her legal estate, as such trustee, ceased, cannot be permitted, upon any principle of justice, to set up her possession, as trustee, to defeat the claim of her *cestui que trust* to an account of the rents and profits accruing up to that period. Her continued occupancy of the property after that was not, under the circumstances of the case, that of a trespasser merely. She

continued to hold under claim of right, and insisted that, by the provisions of the will, the legal estate was still in her, and thereafter, she became her own trustee to the extent of her annuity, and, by consequence, the trustee also of the complainant as to the surplus rents. Her holding under such claim of right cannot be regarded as that of a mere trespasser, and, in our judgment, renders her accountable in equity for *rents and profits so long as she so continued in posses- **594** sion of the property. This can impose no hardship upon the respondent, and is but simple justice to those legally and beneficially interested.

We think the jurisdiction of the court, tested by the averments of the bill, and the facts in the cause, beyond all reasonable controversy, and that a case is disclosed demanding relief. But we are not prepared to endorse the correctness of the account of the auditor. He reports that, from the testimony on each side, he has charged the respondent with rents received or contracted for, deducting the annuity, taxes and insurance. The report is not objectionable on this account, and no exception was taken thereto in this particular, and we have no evidence before us that the respondent has been, in this respect, overcharged. But the auditor's account does not give her credit for the two hundred dollars annuity, nor for years, where the rents and profits did not amount to that much.

The respondent was entitled to the annuity without abatement, as a charge upon the estate, whether the income therefrom was sufficient or not, to pay it. She should be charged with the rents and interests thereon, deducting her annuity, insurance and taxes whilst she had possession of the property; and be allowed for her annuity after the complainant had possession, which has not been done by the report. Whatever sum may be found due upon such statement of the account, should be decreed to be paid by her, with the interest on the principal of the debt; and, until paid, the complainant should be allowed to retain the future annuities of the respondent, and to apply the same, annually accruing, towards the payment of the indebtedness of the respondent until its discharge. The decree below will be reversed and the cause remanded to that court for such proceeding and decree as shall be in conformity with the views herein expressed.

*Decree reversed with costs and cause remanded.*